## MOFFAT & Another *v.* UNITED STATES.

## MOFFAT *v.* UNITED STATES.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

Submitted October 16, 1884.—Decided October 27, 1884.

The presumption of the regularity of all proceedings prior to the issue of a patent for public lands, which is made against collateral attacks by third parties, does not exist in proceedings where the United States assail the patent for fraud in their officers in its issue, and seek its cancellation.

The United States do not guarantee the integrity of their officers, nor the validity of the acts of such, and are not bound by their misconduct or fraud.

A land patent issued to a fictitious person conveys no title which can be transferred to a person subsequently purchasing in good faith from a supposed owner.

The procuring of the issue of a patent at the Land Office by means of false documents which purport to show official proceedings and acts by subordinate officers which are fictitious, is a fraud upon the jurisdiction of the Land Office, and not a mere presentation of doubtful and disputed testimony. *United States* v. *Throckmorton*, 98 U. S. 61, and *Vance* v. *Burbank*, 101 U. S. 514, distinguished.

These were suits to cancel two patents of the United States for land in Colorado, bearing date on the 4th of October, 1873, and purporting to be issued, one to a person by the name of

Philip Quinlan, and the other to a person by the name of Eli Turner, upon proof of settlement and improvement by them under the pre-emption laws. Their cancellation was sought on the ground that the patentees named were fictitious parties; that no settlement or improvement on the lands was ever made; that the documents alleging settlement and improvement were fabricated by the register and the receiver of the land office of the district embracing the land covered by the patents, to defraud the government of the property.

The two suits presented substantially the same facts, differing only as to the parties concerned in the proceedings and the land patented, and were considered together by the court.

The bill in the first case alleged substantially as follows: That the register and the receiver of public moneys of the land office at Pueblo, in Colorado, conspiring to defraud the government of a patent for the land upon the pretext that the same was due to some person, who had performed the duties required of him by the acts of Congress in that behalf, had written out in the form prescribed by law, a declaratory statement in the fictitious name of Philip Quinlan, representing that he had declared his intention to claim the land as a pre-emptioner; and also an affidavit, purporting to be signed by him and sworn to before the register, stating that he had made a settlement upon the land, and improved it in good faith, in order to appropriate it to his exclusive use and benefit, and not for the purpose of sale or speculation; that he had not, directly or indirectly, made an agreement with any person, or in any manner, whereby the title he might acquire would inure, in whole or in part, to the benefit of any one except himself; that they had also prepared an affidavit, purporting to be signed and sworn to before the register by two other fictitious persons, named Michael Quinlan and Orrin R. Peasley, in which it was stated, among other things, that the supposed Philip Quinlan was a single man, over the age of twenty-one years, a citizen of the United States, and an inhabitant of the land; that no other person resided thereon entitled to the right of pre-emption; that he had made a settlement thereon on the 1st of May, 1872, had built a house and made other improve-

ments, and had lived in the house and made it his exclusive home from the 15th of May, 1872, to that date, May 8th, 1873, and had ploughed, fenced, and cultivated eighteen acres of the same. The bill also alleged that at that time the receiver was the owner of a certain amount of Agricultural College scrip issued by the State of Florida; and, for the purpose of locating the land with it in the name of the said Quinlan, the register and the receiver had inserted in a blank indorsement his fictitious name and residence, and in that name had located the scrip on the land; and, also, that they had done divers other acts to cause the plaintiff to believe that the supposed Philip Quinlan was a real person, who had actually appeared before them and made the statements and proof required by law and the regulations of the land office to entitle him to the preemption of the land, and had sworn to such proof before the register; that they had prepared duplicate certificates in the form prescribed by law, setting forth that the said supposed person, represented by said fictitious name, had located the Agricultural College scrip, and made due proof of his right to preempt said land and receive a patent therefor, and forwarded one of them to the General Land Office at Washington, and requested a patent for the land to be issued in the name of the said supposed person; that in June, 1873, an agent of the defendant, David H. Moffat, Jr., appeared before the officers of the said General Land Office and presented to them the other duplicate certificate, and also requested them to issue the patent desired, and transmit the same to him (the agent); and that said officers, confiding in the honesty and integrity of the receiver and the register, and believing the statements contained in the supposed proof forwarded to them, had issued the patent and transmitted it to said agent. The bill further alleged that no person by the name of Quinlan had ever settled upon the land, or appeared and presented himself before the register and the receiver at any time, or made any declaratory statement or proof of pre-emption, either as a pre-emptor or witness, and charged that said papers were made by the register and the receiver for the purpose of fraudulently depriving the United States of their title to the land and vesting the

same in the defendant Moffat; that said Moffat then had the patent and claimed to hold the legal title by virtue of certain mesne conveyances, namely : one executed on the 23d day of May, 1873, in the name of said supposed Philip Quinlan to a fictitious person by the name of Henry H. Perry, and a conveyance by said fictitious person, dated the 23d day of June, 1873, to himself; that the deeds from said supposed parties and the patent had been placed on record in the office of the recorder of the county in Colorado where the land was situated, and constituted a cloud upon the title of the complainant; that on the 15th of September, 1873, said Moffat executed a deed conveying an undivided half of the property covered by the patent to Robert E. Carr, as trustee, and that the deed was on record. And the bill charged that the said Moffat was well aware at the time he received the conveyances and the said patent, of the fraudulent means by which the patent was obtained; that no valuable consideration passed from Carr to him ; and that Carr also was fully informed that the supposed pre-emption and proceedings were false and fraudulent. The plaintiff therefore prayed that the patent might be set aside and declared void and delivered up to be cancelled, and that the deeds from Quinlan to Perry, and from Perry to Moffat, and from Moffat to Carr, might also be adjudged void.

In the second case the bill, as finally amended, alleged a similar conspiracy to defraud the government of a patent for another tract of land in the name of another fictitious person upon proofs by other supposititious persons, the pretended pre-emptor being Eli Turner, and the pretended witnesses to prove compliance with the pre-emption law being Simeon D. Porter and Anson Beck. The bill also alleged a conveyance from the pretended Eli Turner to a fictitious person, by the name of Thomas Harris, in June, 1873, and a conveyance from Harris to the defendant Moffat in the same month, and that such proceedings were had, that on the 4th of October, 1873, a patent was issued for the land in the name of Eli Turner. And the bill charged that Moffat was cognizant of the false and fraudulent character of the alleged pre-emption of Turner, and of the proofs offered in its support, and prayed, as in the first case,

that the patent be set aside and cancelled, and the deeds of the supposed Turner and Harris be adjudged void.

The defendants answered the bills in both cases, denying their material allegations, and the charges of conspiracy and fraud, to which answers replications were filed. The testimony taken fully established the truth of the allegations and charges, except as to the knowledge by Moffat and Carr of the alleged frauds; and the Circuit Court decreed the cancellation of the patents and the mesne conveyances purporting to pass the title from the pretended patentees to Moffat, and from him to Carr. From these decrees the defendants appealed, and sought a reversal on four grounds, which were substantially as follows:

First. That the evidence that the patentees were fictitious parties was insufficient to overcome the presumption arising from the patents themselves, and the certificates of the register and the receiver;

Second. That as the frauds alleged were committed by public officers, the receiver and the register, the government was bound by their acts, and the court erred in not giving effect to the patents and conveyances, so as to protect the defendants claiming under them;

Third. That Moffat and Carr were innocent purchasers for value, and, as such, were protected against the consequences of the alleged fraudulent methods by which the patents were issued; and

Fourth. That no offer was made in the bill in either case to return the scrip received by the government for the land.

*Mr. L. C. Rockwell* for appellants.—I. The decree was not warranted by the evidence. A patent raises a presumption of an actual grantee which can only be overcome by proof. *Thomas* v. *Wyatt*, 31 Missouri, 188. The issue of a patent by the officer appointed for that purpose presupposes a compliance with the rules prescribed for that duty. *Polk's Lessee* v. *Wendall*, 9 Cranch, 87; *Polk's Lessee* v. *Wendell*, 5 Wheat. 293.— II. The entry of the lands and the patent issued by the government are declarations by it that all the steps required by law antecedent to the entry of the lands and the issue of the

patent have been complied with, and the government is conclusively bound by those declarations as against a *bona fide* purchaser for value. Rev. Stat. §§ 2262, 2264; *Vance* v. *Burbank*, 101 U. S. 514; *Steele* v. *Smelting Company*, 106 U. S. 447; *Smelting Company* v. *Kemp*, 104 U. S. 636; *French* v. *Fyan*, 93 U. S. 169, and cases cited. The principle settled in *Knox County* v. *Aspinwall*, 21 How. 539, is applicable to and conclusive of this case. See also *Coloma* v. *Eaves*, 92 U. S. 484; *Marcy* v. *Oswego*, 92 U. S. 637; *Humboldt* v. *Long*, 92 U. S. 642; *Patterson* v. *Winn*, 11 Wheat. 380, 387; *Patterson* v. *Jenks*, 2 Pet. 216, 237; *United States* v. *Arredondo*, 6 Pet. 691, 729. Where one of two innocent persons must suffer by the deceit of another, he who puts trust and confidence in the deceiver must lose, rather than a stranger. *Carpenter* v. *Longan*, 16 Wall. 271; *N. Y. & N. H. Railroad Company* v. *Schuyler*, 34 N. Y. 30, 69; *Griswold* v. *Haven*, 25 N. Y. 595, 599.—III. Defendants below were entitled to be treated as innocent purchasers for value. The fraud, if any, was practised on the government by its register and receiver, and the United States is bound by it. It does not affect Moffat and Carr. *United States* v. *Throckmorton*, 98 U. S. 61, 64. As to the effect of an official certificate of the register, see Laws Colorado, ch. xxxii., § 1080; *Gallipot* v. *Manlove*, 1 Scam. 156; *Witherspoon* v. *Duncan*, 4 Wall. 210.—IV. No offer is made in the bill to return the scrip or money received for the land. This is inequitable, and the decree is wrong and should be reversed for want of equity in the bill. When the government goes into a court of justice it is to be treated like any other litigant, and its rights, with few exceptions, are governed by the same rules of law that pertain to citizens. *The Siren*, 7 Wall. 152; *Floyd Acceptances*, 7 Wall. 666; *Brent* v. *Bank of Washington*, 10 Pet. 569.

*Mr. Assistant Attorney-General Maury* for appellee.

Mr. Justice FIELD delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

These cases present the same questions, and may be consid-

ered together. In our judgment none of the positions of the appellants justifies our interference with the decrees of the court below. The presumption as to the regularity of the proceedings which precede the issue of a patent of the United States for land, is founded upon the theory that every officer charged with supervising any part of them, and acting under the obligation of his oath, will do his duty, and is indulged as a protection against collateral attacks of third parties. It may be admitted, as stated by counsel, that if upon any state of facts the patent might have been lawfully issued, the court will presume, as against such collateral attacks, that the facts existed; but that presumption has no place in a suit by the United States directly assailing the patent, and seeking its cancellation for fraud in the conduct of their officers. In such a suit the burden of proof is undoubtedly, in the first instance, on the government to show a fatal irregularity or corrupt conduct on their part; but when a case is established, which, if unexplained, would warrant a conclusion against them, the burden of proof is shifted, and they must show such integrity of conduct and such a compliance with the law as will sustain the patent. Its validity is, then, determinable, like any other controverted fact, upon the weight of evidence produced in support of and against their action.

There was no presumption here in favor of the officers which the testimony produced by the complainant did not entirely rebut and overthrow. Numerous witnesses, living in the immediate neighborhood of the land, testified that they were well acquainted with it, had been frequently upon it, that no one resided there, and that no improvements were made as stated in the pre-emption papers. They also testified that they never knew nor heard of persons by the names of the alleged pre-emptors, nor of the persons whose names were used in the attempted proof of settlement and cultivation. Neither the register nor the receiver came forward to disprove the conclusions which this testimony justified, that the pretended pre-emptors and patentees were fictitious persons. The suggestion that real parties may have appeared before the register and the receiver as pre-emptors and witnesses, having the names used,

though usually known by different names, is far-fetched, and merits no consideration where the fact, with reasonable explanation for the use of the unusual names, was not established, nor proof adduced of the settlement on, and improvement of, the land. No such attempt was made, and if it had been it would, according to the evidence received, have signally failed.

The position that, as the frauds charged were committed by officers of the United States, the court erred in not holding their acts to be binding, and in not giving to the patents the force of valid conveyances, is certainly a novel one. The government does not guarantee the integrity of its officers nor the validity of their acts. It prescribes rules for them, requires an oath for the faithful discharge of their duties, and exacts from them a bond with stringent conditions. It also provides penalties for their misconduct or fraud, but there its responsibility ends. They are but the servants of the law, and, if they depart from its requirements, the government is not bound. There would be a wild license to crime if their acts, in disregard of the law, were to be upheld to protect third parties, as though performed in compliance with it. The language used in the case of Pope's Lessee against Wendell sanctions no such doctrine. (5 Wheat. 293, 304.) It was there used with reference to collateral attacks upon patents, in cases where the irregularities were committed by officers in the exercise of their admitted jurisdiction, and can have no application to the acts of officers in fabricating documents in the names of persons having no real existence.

The patents being issued to fictitious parties could not transfer the title, and no one could derive any right under a conveyance in the name of the supposed patentees. A patent to a fictitious person is, in legal effect, no more than a declaration that the government thereby conveys the property to no one. There is, in such case, no room for the application of the doctrine that a subsequent *bona fide* purchaser is protected. A subsequent purchaser is bound to know whether there was, in fact, a patentee, a person once in being, and not a mere myth, and he will always be presumed to take his conveyance upon the knowledge of the truth in this respect. To the applica-

tion of this doctrine of a *bona fide* purchaser there must be a genuine instrument having a legal existence, as well as one appearing on its face to pass the title. It cannot arise on a forged instrument or one executed to fictitious parties, that is, to no parties at all, however much deceived thereby the purchaser may be. Even in the case of negotiable instruments, where the doctrine is carried farthest for the protection of subsequent parties acquiring title to the paper, it cannot be invoked if the instrument be not genuine, or if it be executed without authority from its supposed maker. *Floyd's Acceptances*, 7 Wall. 666, 676; *Marsh* v. *Fulton County*, 10 Wall. 676, 683.

As to the position that no offer is made in the bills to return the scrip received for the land, only a word need be said. The pretended patentees, who are supposed to have given the scrip, being mere myths, having no actual existence, it would be idle to offer to return it to them; and for the same reason they can have no agents to act in their behalf.

A strenuous effort is made by counsel to bring these cases within the doctrine declared in *United States* v. *Throckmorton*, 98 U. S. 61, and *Vance* v. *Burbank*, 101 U. S. 514, but without success. It was held in those cases that the fraud which will justify the setting aside of the judgment of a tribunal specially appointed to determine particular facts, must be such as prevented the unsuccessful party from fully presenting his case, or which operated as an imposition upon the jurisdiction of the tribunal. Mere false testimony, or forged documents, are not enough if the disputed matter has been actually presented to and considered by the tribunal. Here officers, constituting a special tribunal, entered into a conspiracy; and the frauds consist of documents which they had fabricated, and presented with their judgment to those having appellate and supervisory authority in such matters; and thus a fictitious proceeding was imposed upon the latter as one which had actually taken place. It was a fraud upon the jurisdiction of the officers of the Land Department at Washington, and not the mere presentation to them of doubtful and disputed testimony.

*Decrees affirmed.*