Bichardson, Oh. J.,
delivered the opinion of the court:
The material facts in the case, concisely stated, are as follows :
H. P. Woodward, of Tennessee, died in 1869, leaving a will, in which he directed certain insurance money when collected to be invested in United States coupon bonds for the benefit of his widow and child.
The executor, one Cochran, invested the same in three United States registered bonds of $5,000 each, payable to himself, executor, or assigns, and regularly paid over to the widow the income of said bonds until May, 1873, when he died.
In September, 1873, one Anderson, a public administrator, on his petition, was duly appointed administrator de bonis non with the will annexed of the eatate of said Woodward, obtained possession of the bonds, paid the interest thereon, or amounts equal thereto, up to January, 1880, when he failed, and the payments ceased. In the mean time the widow had intermarried with one Covington.
In December, 1876, Anderson took two of said bonds to the German National Bank of Memphis in order to effect a sale, saying that he wanted to invest for a better rate of interest ; that he could get' 10 per cent, for the money, at the same time showing a paper from the Treasury Department at Washington, of which no copy is in evidence, to the effect that as successor of Cochran in the administration of Woodward’s estate *211 be bad tbe power to transfer tbe bonds. Tbe Memphis Bank, one of tbe.claimants, sent them to the Chemical Bank of New York, tbe other claimant, with these instructions: “ Judge J. A. Anderson filed tbe proper papers with tbe Department, as per memo, inclosed. We do not wish to be responsible after paying tbe funds over here for any irregularity in tbe papers.”
Tbe following correspondence took place between tbe Chemical National Bank and the Begister of tbe Treasury.
“Chemical National Bank,
“ New York, Dec. 19, 1876.
“Hon. Begister on Treasury:
“ Dear Sir : We have received from tbe German Nat. Bk., of Memphis, Teun., tbe following-described certificates: U. S. 5-20-’Ü5, Jan. and July, No. 7701, to order M. E. Cochran, executor, of Memphis, Tenn., $5,000; do. No. 6081, to order to M. E. Cochran, executor, and $5,000, which said bank requests us to sell, but distinctly state that they do not wish to be responsible after paying the fund over for any irregularity in papers, which are herein inclosed.
“ We desire to comply with the wishes of the German Nat., but do not wish to become responsible for irregularities, etc., and therefore refer tbe case to you.
“ Please to inform us what action to take. The certificates are assigned in blank by J. A. Anderson, admr. of H. P. Woodward, deceased, and appear to have been witnessed by a notary public, having bis official seal attached.
“ If you are willing, we will forward them for registration in our name, as in their present shape they are not a good delivery in this market.
“ Very resp’y,
“G. G. Williams, Gash.”
“ Treasury Department, Register’s Oeeice,
“Nee. 20,1876.
“ Sir : In answer to your inquiry of yesterday, I have to state that there is on file in this office satisfactory power in favor of your bank to trahsfer the bonds referred to, and a reassignment by your Mr. Jones, as pres’t, to any party purchasing will be recognized, or, if preferred, new bonds will be issued to your bank under the present assignments.
“Bespectfully, yours,
“ H. Jennison, for Beg’r.
“ G. G. Williams, Esq.,
“ Cashier Chemical Nat. Bank, New York.'”
Thereupon the Chemical National Bank surrendered said bonds, and received from the Register of the Treasury new bonds of like kind, payable to itself or assigns, according to *212 tbe terms of the assignment written on the back of the old bonds. They were then sold and the proceeds transmitted to the Memphis bank, passed to the personal credit of said Anderson, checked out from time to time on his personal check, converted to his own use, and lost to the beneficiaries.
The only papers appearing to be on file in the Register’s office were the copies of the decree of court appointing Anderson administrator de bonis non with the will annexed of the estate of said Woodward and his letters of administration. No copy of the will appears to have been on file.
Whether or not the Register of the Treasury was justified in receiving and canceling the bonds and issuing new bonds by the assignment of Anderson upon authority of the papers on file in his office it is not necessary to determine. Cochran took the bonds in his name as executor and not as trustee, as though they were part of the estate of the deceased over which he had control, and declared no trust. The will itself, if it had been filed, would not have disclosed the trust to which they really belonged, as it finally appears by other evidence, and if its contents had been known to the Register he might have been misled. It required certain specific money obtained from insurance “ to be invested in interest-bearing bonds (gold) with coupons attached, interest payable semiannually, these coupons to be given to my wife, Sallie F. Woodward, as they fall due, for her support and the support and educating her child by me begotten.” The bonds received for transfer were not coupon bonds, and that clause of the will did not in terms apply to them. The Register might have naturally concluded, if he did see the will,, that the insurance money left in trust for the widow and child was invested in coupon bonds as required, and that these registered bonds were part of the general assets of the testator, which passed to the successor of the executor. How far the Register of the Treasury is bound to go in taking evidence aliunde upon such intimation of a secret trust as would put interested private parties on their guard, and charge them with notice, we shall not undertake to decide.
If the action of the Register of the Treasury was correct upon the papers on file in his office or otherwise, then the claimants have no cause of action.
*213 If tbe Register was wrong, and the claimants contributed to the commission of their error, then, also, they have no cause of action.
Public officers are mere agents of the Government, and all persons dealing with them are bound to act in perfect good faith, to obtain and disclose all facts within their reach material to the matter in hand, and not to aid in misleading them into errors of omission or commission. (Hume's Case, 21 C. Cls. R., 328, affirmed on appeal, 132 U. S. R., 406).
The claimants have been charged by the Supreme Court of Tennessee as wrongdoers, and a judgment has been recovered against them on that ground alone (Covington et al. v. Anderson et al., 16 Lea, Tenn. R., 310).
In the opinion of the court, delivered therein by the chief justice, it is said:
“ It was impossible to have read the bonds, however casually, without discovering that there was a trust of some character impressed upon them, which trust could be ascertained by reference to the will.
“They bore the unmistakable brands of'the rights of ownership of others, without the slightest evidence of claim of any character on the part of Anderson.
“The banks were interested in the conversion to the extent of the remuneration received for making the sale.
“The opinion of the Treasury, officer in Washington can avail nothing. His mistake of law or fact furnishes no ground of relief. Besides, his was not the office to consult.
“ In taking up the original bonds earmarked with a trust, and issuing others to the bank, the trust left out, he made himself a party to the conversion. The consent to and acceptance of such issue was a positive conversion on the part of the bank.
“ They were by all the facts and circumstances put upon the inquiry, and did make a partial inquiry at the office in Washington. They are conclusively presumed to have known that any information they received from the Washington correspondent must have been based on information derived from Memphis, where the records were, and they must also be presumed to have known that the only reliable source of information for them was in those records.
“ Surely it can not be that they are to be excused upon the ground that they passed by the only reliable evidence, and adopted in its stead, and acted upon the conclusion, without any statement of facts, of one not authorized to construe the records.
“ They were aware that Anderson had furnished the only information upon which the Washington correspondent acted, *214 as they say themselves that Anderson exhibited a paper or memorandum from the Treasury Department at the time he applied to sell the bonds.
“This fact, connected with the reply of the Washington correspondent, that Anderson, as the successor to Cochran, had the right to control the bonds, made it plain that it was their duty to have examined into the fact whether he was the successor, when they would have proved he was not. Although the evidence furnished may have satisfied the writer of the memorandum or paper that Anderson was the successor, it does not satisfy the law, and was not such as is admissible in the courts. This ignorance of law will not excuse the conduct of the defendants.”
Haviug paid that judgment, they seek to recover the amount from the defendants by subrogation to the rights of Mrs. Woodward and her child, the beneficiaries of the trust fund.
Wrongdoers can not be subrogated to any rights of those whose interests have been impaired or imperiled by the acts of the former. The claimants were the agents of Anderson to obtain a transfer and sale of the bonds. They aided in the commission of his wrongdoing, and were participants therein, according to the judgment of the Supreme Court of Tennessee. Through their action Andérson managed to get the trust fund into his own hands. One of them took a transfer to itself, sold the bonds, and forwarded the proceeds to the other bank, which passed the same on its books to his personal credit, and allowed it to be drawn out on his own personal checks. By this joint action and otherwise the two banks have made the transactions a common cause, and they must stand or fall together.
What rights of the beneficiaries could the claimants be subrogated to? Certainly not to any right of action against the United States, for it has been too long and too well established to admit of further discussion that the Government is not responsible for the laches or wrongful acts of its officers (Hart v. United States, 95 U. S.R., 316; Moffatt v. United States, 112 U. S. R., 24; Gibbons v. United States, 8 Wall., 269). Besides, the court has no jurisdiction of actions sounding in tort (Act of 1887, March 3, ch. 359, 24 Stat L., 503) and this case, as presented in the petition and set out in the findings, may be regarded as of that kind, unless some promise is to be implied, and we can see no ground for that.
It has been much argued that the Government is liable for *215 tbe conduct of public officers when acting within the scope of their authority. There are many cases wherein that doctrine has been upheld in matters of coutract, out none in which it has been applied to wrongs committed when not constituting breaches of contract. The scope of authority of the Register in this connection, in the absence of express statutory provisions, is defined to be “ to transfer on proper authority the ownership of registered bonds from one person to another.” (Ellmes on Executive Departments, §690.)
To give advice and assistance in the transfer of bonds, whether by the Register or by one of his subordinates, was an excess of authori ty, and to transfer them without proper authority was a wrongful act, for neither of which is the Government liable.
In point of fact, the beneficiaries have treated the transfer of the bonds as valid, though procured by fraud. They have pursued the, proceeds as rightfully belonging to them, and have recovered judgment therefor against Anderson as principal in the fraud and against the claimants as aiders and abetters.
The petition is dismissed.