## HARRISON et al. v. TRIPLEX GOLD MINES, Limited, et al.

Circuit Court of Appeals, First Circuit.
July 15, 1929.

No. 2328.

Thomas W. Morris, of Boston, Mass. (Arthur Berenson and Bernard Berenson, both of Boston, Mass., on the brief), for appellants.

Charles W. Proctor, of Worcester, Mass. (John V. Spalding, of Boston, Mass., on the brief), for appellees Post, Hildreth, Welch, Greenwood, Cline, Granger, Smith, and Nelson.

Douglas Whitcomb, of Worcester, Mass. (George H. Mirick and Mirick, Blackmer, Rugg & Whitcomb, all of Worcester, Mass., on the brief), for appellee Heslor.

Before BINGHAM and ANDERSON, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. This is a bill in equity brought by Duncan B. Harrison and his wife, Ethel G. Harrison, against the defendant the Triplex Gold Mines, Limited, a corporation organized under the laws of the province of Ontario, Dominion of Canada, alleged to have had, and now to have, a usual place of business in Worcester in the commonwealth of Massachusetts, and individual defendants, Charles B. Post, Andrew G. Hildreth, Harry L. Welch, George S. Greenwood, Charles E. Cline, Frank D. Heslor, Albert R. Smith, Christian Nelson, all of Worcester, George S. Greenwood, of Gardner, and Oscar T. Granger, of Boston, all in the commonwealth of Massachusetts.

The main object sought in the bill is to obtain an injunction restraining the defendants individually and collectively from enforcing decrees of the Supreme Court of Ontario, Canada, entered against the plaintiffs in litigation brought by the Triplex Gold Mines, Limited, hereafter called Triplex, and others against Harrison and wife, defendants in that action, plaintiffs in this. The plaintiffs also seek affirmative relief in the nature of damages.

The case was heard in the District Court upon defendants' motion to dismiss the bill. From a decree dismissing the bill, an appeal was taken to this court.

The plaintiffs' substitute bill of complaint covers forty-eight pages of the record. A statement of the main facts alleged are necessary to a consideration of the case.

The narrative parts of the bill recite:

That Triplex was organized in 1921 with an authorized capital stock of $5,000,000, divided into 5,000,000 shares of the par value of $1 each.

That all the individual defendants except Smith and Nelson have been, ever since 1921 up to June 2, 1928, officers and directors of Triplex, elected by the votes of the plaintiffs.

That, prior to the organization of Triplex, Harrison owned the mining rights, now the property of Triplex, located in Shaw county, Ontario, Canada, and, in consideration of the transfer of these mining rights to Triplex, 2,750,000 shares of the capital stock were issued to Harrison from which he transferred 600,000 shares to his wife.

That, after Harrison acquired said rights, he invited the defendants and others to subscribe and purchase his promotion stock at a price of two shares for every dollar subscribed, and, as a further inducement, he agreed to contribute additional stock to subscribers, and did convey to them a large number of shares as a gratuity.

That about 400,000 shares in addition to the 2,750,000 shares were sold at a price of $200,000.

That on or about July 6, 1921, Harrison entered into an agreement with Triplex to act as its sole fiscal agent for a period of five years, with full power to dispose of its corporate stock, he to receive for his services a commission of 25 per cent. on stock sold, and all expenses.

That he sold 400,000 shares at 50 cents per share, and was entitled to $50,000 commissions and to reimbursement for expenses.

That, pursuant to his contract, he devoted his time and skill to the interests of Triplex as its active manager and fiscal agent until November 16, 1922, installed machinery, caused the mine to be operated, and a large quantity of ore, including gold and silver, to be mined.

That from time to time, as required, Harrison made reports to the directors and stockholders of the condition of the property and finances of Triplex, which reports were approved.

The gist of the complaint is that the defendants have entered into a conspiracy to injure and defraud the plaintiffs and deprive them of their property rights.

They allege overt acts in the following particulars:

That on or about November 16, 1922, the defendant caused a directors meeting to be held in Worcester, Mass., at which they purported to pass votes to institute an investigation of the transactions of Harrison with the corporation; to dispense with his further services; and to appoint an attorney for the corporation with authority to institute legal proceedings.

That said votes were colorable acts, wholly for the benefit of the defendants, not in the interest of Triplex, and were passed in pursuance of the conspiracy.

That, without investigation, suit was brought against the Harrisons, in the name of the corporation, by Charles B. Post, in the Supreme Court of Ontario, who sued in his own behalf and in behalf of all other stockholders.

That on December 16, 1922, the said Post filed in the suit a statement of his claim, setting forth that $175,000 derived from the sale of stock had been intrusted to Harrison, that Harrison had represented that the purchase price of the mine was $50,000, when in fact it was only $15,000; that Harrison had been guilty of fraud and misrepresentations in his dealing with Post and with Triplex, and that he had organized Triplex with a capitalization of $5,000,000, and had issued 2,-750,000 shares to himself, sufficient to give him a controlling interest, which was more stock than he was entitled to receive.

As we deem it important to an understanding of the questions involved in the Canadian litigation, the prayer of the bill in that suit is set forth at length as follows:

(1) That Harrison be declared to have acted in fraud of Triplex, and that he issued shares to himself to which he was not entitled, and that he be ordered to return the same.

(2) That all shares issued by Triplex be found to have been illegally issued to Harrison.

(3) For an accounting of all shares improperly and illegally issued by Triplex to Harrison.

(4) For an accounting of all shares improperly and illegally issued to (Mrs.) Harrison.

(5) For an investigation of all transactions and dealings of Harrison and his wife with the company's property, stocks, and moneys.

(6) That Harrison be deemed to be a trustee for the plaintiff of all the shares of the plaintiffs standing in his name or in the name of his wife.

(7) To declare and fix the interests of Harrison in Triplex as between himself and Post.

(8) That Harrison be restrained from dealing with the company's property.

(9) For an injunction requiring him to deliver up moneys received by him from the sale of shares to the company, and to account to the company.

The Harrisons filed a full and complete answer to the bill. A trial was had January 10, 1923, and on July 3, 1923, the court entered a decree covering fully the matters litigated, ordering an accounting by the Harrisons of their financial transactions with Triplex, and appointing a master to take account of the stock due from Harrison to Post. Thereafter an appeal was taken by Harrison to the appellate court in the province of Ontario, and from that court to the Supreme Court of Canada. In both courts the appeal was dismissed. The hearing before the master has not yet been completed.

Additional overt acts committed by the defendants are alleged in the present bill as follows:

That by means of perjury, subornation of perjury, suppression of evidence, and manufacturing documentary evidence, the defendants have obtained a decree in the case brought by the corporation and by Post, although brought to enforce different rights and interests against the defendants.

That the defendants removed certain trunks of the plaintiffs containing private property as well as certain papers, documents, records, and memoranda of the plaintiffs, and secreted them and withheld the testimony therein contained from the Canadian court.

That the defendant Post concealed from the court that he stood in a fiduciary relation to the corporation, and thereby obtained a decree which he could not have otherwise had if he had disclosed the true state of affairs.

That the defendants, although voted out of office by the corporation, are pursuing litigation against the plaintiffs in the name of, and on behalf of, our corporation.

That, in pursuance of the conspiracy, the defendants have caused to be brought other actions against the Harrisons in state courts in this country for the purpose of harassing these plaintiffs by means of litigation.

That the defendants, or some of them, caused the plaintiff Harrison to be indicted by the grand jury in Worcester county, Mass., and caused proceedings to be instituted to extradite him from the state of New York, but extradition was denied by the Governor of that state.

That the defendants complained against Harrison to various departments of the federal government and to the internal revenue and income tax divisions of the states of New York and Massachusetts.

That the defendants have slandered and libelled Harrison, and caused him to be assaulted and beaten for the purpose of destroying his resistance in litigation.

That the individual defendants, acting as officers of the corporation, have discharged the plaintiff as constructive manager and fiscal agent.

That the defendants are not able to respond in damages in an action at law, and that Post has given or conveyed away certain property to his wife to avoid execution being levied against him.

That the defendants herein, pursuant to the conspiracy, have caused the mines to be shut down, and have refused to operate them or to permit Harrison to operate them.

It further appears in the present bill of the plaintiffs that a petition for a review of the judgment of the Canadian courts was filed with the judge who passed upon the merits, setting forth as grounds for review that the judgment had been secured by fraud, perjury, subornation of perjury, concealment of witnesses, and destruction and concealment of material documents which the plaintiff Harrison claims would have been a complete defense in the action.

Plaintiffs' bill contains a further allegation that, unless relief is granted them by this court, they will suffer irreparable damage.

The prayer for relief covers six pages and sixteen paragraphs of the record, the most important of which is a prayer that the corporation, its officers, agents, directors, attorneys, and employees be restrained from enforcing any judgment or decree which has been obtained against the plaintiffs in the Supreme Court of Ontario and from proceeding further with the hearing before the master appointed by said court, and from levying upon their property in Ontario or elsewhere any executions for costs or damages issued by said court.

Other paragraphs contain a prayer for an order of this court declaring null and void the decrees of the Supreme Court of Ontario; that the title claimed by Post to the shares delivered to him by Harrison pursuant to a decree of the Supreme Court of Ontario be declared null and void; that the individual defendants be enjoined from acting as officers or directors of the corporation; that said Post and other individual defend-ants be restrained from using the funds of Triplex in the prosecution of the litigation in Canada; that this court declare an unlawful conspiracy to exist to defraud the plaintiffs of their property; that the defendants be enjoined and restrained from harassing, annoying, slandering, and libelling the plaintiffs, and from maintaining or instituting any further actions against them, concluding with a prayer for money damages and general relief.

The defendants moved to dismiss the plaintiffs' bill on the following grounds:

(1) That the plaintiffs' bill does not set out sufficient grounds for equitable relief.

(2) That the plaintiffs have a complete and adequate remedy at law.

(3) It does not appear from the plaintiffs' bill of complaint that irreparable damage will be done to the plaintiffs by the acts of the defendants.

(4) That the object of the bill is to restrain the prosecution and enforcement of judgments and executions ordered by a court of general jurisdiction of a foreign country; that said bill of complaint is an attempt to impeach collaterally said judgments and executions, it not appearing in the bill of complaint that such country fails to give full faith and credit to the judgments and executions of courts of the United States.

(5) That the purpose of the bill is to restrain the prosecution of actions brought in foreign states of this country, and that it is not alleged in the bill that the matters therein set forth could not equally well be pleaded and proved in defense of such actions, if true.

Equitable jurisdiction appears to be predicated in the plaintiffs' bill upon the nature of the relief sought. If the facts do not warrant the court in granting an injunction enjoining the individual defendants from enforcing the Ontario judgment, there is nothing in the remaining allegations which will sustain the jurisdiction of a court of equity. The first and most important question therefore is whether this court should restrain the prosecution and enforcement of the judgment and execution ordered by a court of general jurisdiction in a foreign country.

■ It has been held that no law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived. The extent to which the law of one nation, as put in force within its territory, whether by executive order or by legislative acts or judicial decree, shall be allowed to operate within the dominion of another nation, depends upon the comity of nations.

The principle of comity is extended by the courts of this country to the judgments of the courts of a foreign country to the same extent that courts in the foreign country extend the principle to judgments of the courts in this country. Hilton v. Guyot, 159 U. S. 113, 16 S. Ct. 139, 40 L. Ed. 95; Kessler v. Armstrong Cork Co. (C. C. A.) 158 F. 744; Alaska Commercial Co. v. Debney (C. C. A.) 144 F. 1; Strauss v. Conried (C. C.) 121 F. 199; Gioe v. Westervelt (C. C.) 116 F. 1017.

In the case of Ritchie v. McMullen, 159 U. S. 235, 16 S. Ct. 171, 40 L. Ed. 133, it is held that a foreign judgment rendered by a court having jurisdiction of the cause and of the parties, upon regular proceedings and due notice of appearance, and not procured by fraud, by the law of which country, as in England and in Canada, a judgment of one of our own courts, under like circumstances, is held conclusive of the merits, is conclusive, as between the parties, in an action brought upon it in this country, as to all matters pleaded and which might have been tried in the foreign court.

It appears that by the law of England, prevailing in Canada, a judgment rendered by an American court cannot be collaterally attacked except under practically the same conditions as prevail under the "full faith and credit" clause of the Federal Constitution. Const. art. 4.

In the leading case of Hilton v. Guyot, 159 U. S. 113, 203, 16 S. Ct. 139 (40 L. Ed. 95), the Supreme Court lays down the following rule for impeachment of judgments of courts of foreign countries:

"Where there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it was sitting, or fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect, the merits of the case should not, in an action brought in this country upon the judgment, be tried afresh, as on a new trial or an appeal, upon the mere assertion of the party that the judgment was erroneous in law or in fact."

As to domestic judgments, the rule laid down by Mr. Justice Miller in the leading case of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, has been consistently followed, except in a few instances. It is there held that the fraud for which a bill to set aside a judgment or decree between the same parties rendered by courts of competent jurisdiction will be sustained are those which are extrinsic or collateral to the matter tried, and not a fraud which was in issue in the former suit.

It is contended by the plaintiffs that there is a distinction between foreign judgments and domestic judgments, in that foreign judgments may be enjoined or set aside or impeached on the ground of fraud, whether such fraud is extrinsic or intrinsic, and that domestic judgments can be collaterally attacked only upon the ground of extrinsic fraud.

If the decisions of domestic courts are to be restricted to a strict reciprocity basis, the cases of Vadala v. Lawes, 25 L. R. Q. B. 310; Abouloff v. Oppenheimer, 10 Q. B. D. 295, and Hollender v. Ffoulkes, 16 Ont. Prac. Rep. 175, cited by plaintiffs, appear to give color to their contention.

It appears to us, however, that the decision of the instant case does not rest upon any narrow distinction between extrinsic and intrinsic fraud. In any case to justify setting aside a decree for fraud, it must appear that the fraud practised, unmixed with any fault or negligence of the party complaining, prevented him from making a full and fair defense, and that the fraud complained of was not involved in, or presented to, the court of first instance either at the original trial or in a petition for review. This rule is universal. False testimony or fabricated documents are not sufficient to justify the interference of a court of equity, if they have been presented to the court determining the law and the fact in the first instance. The reason for the rule is that there must be an end to litigation.

In the case of Toledo Scale Co. v. Computing Scale Co., 261 U. S. 399, 421, 43 S. Ct. 458 (67 L. Ed. 719) Chief Justice Taft says:

"We do not find ourselves obliged to enter upon a consideration of the sometimes nice distinctions made between intrinsic and extrinsic frauds in the application of the rule, because in any case to justify setting aside a decree for fraud whether extrinsic or intrinsic, it must appear that the fraud charged really prevented the party complaining from making a full and fair defense." Moffat v. United States, 112 U. S. 24, 32, 5 S. Ct. 10, 28 L. Ed. 623; United

States v. Gleeson (C. C. A.) 90 F. 778. See, also, Redfield v. First Nat. Bank, 66 Utah, 459, 244 P. 210; Ross v. Wood, 70 N. Y. 8.

■ The original suit in Canada was instituted November 21, 1922. It apparently has been pending in the Canadian courts for a period of approximately seven years, and is still undetermined with respect to some important phases. A full and complete answer to the action was filed, and there was a trial on the merits. The plaintiffs herein, after decrees were rendered against them, carried their appeals through successive courts to the highest tribunal in the Dominion. After their appeals had been dismissed, they came back before the judge, who passed upon the merits and filed a petition for review. In that petition was set out fraud, perjury, concealment of witnesses, destruction and concealment of material documents, and in fact nearly every ground upon which we are asked to intervene. The petition for review was contested and denied.

It cannot be said that the parties have not had a full and fair opportunity and plenty of time to present every defense to the action brought against them. In fact, it appears that they have so presented them, and that the main object of the present litigation is to prevent the defendants herein from receiving the benefit of the litigation so long contested, and to give these plaintiffs an opportunity to retry the issues that have already been determined.

We cannot lend ourselves to such a proceeding, and, unless there is some other ground of equitable jurisdiction, the plaintiffs' bill must be dismissed.

■ The instant case is to be distinguished from cases cited by the plaintiffs, in that the successful litigants in the Ontario action are not seeking the aid of this court to enforce any rights or decrees obtained there. When citizens of this country engage in an enterprise in a foreign country with respect to property there situated, they subject themselves to the laws, decisions, and decrees of its courts respecting such property and property rights. No cases have been cited and none have been found which would sustain the jurisdiction of this court to declare null and void the orders and decrees of a court of general jurisdiction in Canada.

■ We are asked to enjoin the defendants from acting as officers and directors of Triplex in so far as they threaten to take action, or cause Triplex or its directors to take further action with respect to the litigation pending in the Supreme Court of Ontario. This is only another way of attempting to reach the same result as that already discussed. So far as the validity of the election of defendants as officers of Triplex is in issue, it relates solely to the internal affairs of the corporation, and can be determined only by the laws of the country of its incorporation. Wason v. Buzzell, 181 Mass. 338, 63 N. E. 909.

■ Slander, libel, and assault are grounds for tort actions, but not for equitable jurisdiction. Francis v. Flinn, 118 U. S. 385, 6 S. Ct. 1148, 30 L. Ed. 165.

■ The allegation in plaintiffs' bill that one of the defendants has conveyed to his wife real estate for the purpose of avoiding the payment of any judgment which might be obtained against him in this action does not furnish a ground for equitable relief. The plaintiffs are not judgment creditors. It is said by Mr. Justice Brewer in the case of Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113: "The plaintiffs were simple contract creditors of the company. * * * It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims; and this, notwithstanding a statute of the State may authorize such a proceeding in the courts of the State. The line of demarcation between equitable and legal remedies in the Federal courts cannot be obliterated by state legislation."

■ It is claimed that this court ought to restrain the defendants from further prosecuting the several actions pending in state courts against the plaintiffs on the ground of preventing a multiplicity of suits.

Federal courts have no power to enjoin proceedings in a state court, except as authorized by statute. Judicial Code, § 265 (28 USCA § 379), provides:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The prohibition contained in this section extends, not only to orders of the federal court directly restraining proceedings of the state court, but to all orders of a federal court which necessarily have that effect. Haines v. Carpenter, 91 U. S. 254, 23 L. Ed. 345; Cœur d'Alene Ry. & Nav. Co. v. Spalding (C. C. A.) 93 F. 280.

■ This disposes of the several prayers for injunctive relief, leaving bare the question of damages, which appears to be predicated

largely upon injury to the plaintiffs by reason of the acts of the defendants in unjustly obtaining their judgment and decrees in the Canadian courts. If plaintiffs are entitled to damages, they may be obtained in a suit at law.

· The decree of the District Court dismissing the bill is affirmed.

ANDERSON, Circuit Judge, concurs in the result.