## DOCKERY v. HANAN et al.
### No. 12692.

Court of Civil Appeals of Texas. Fort Worth.
June 11, 1932.

Rehearing Denied Oct. 8, 1932.

Dean & Perkins and Elton M. Hyder, all of Fort Worth, for appellant.

Clay Cooke and A. W. Christian, both of Fort Worth, for appellees.

DUNKLIN, J.

In July, 1928, there was a meeting of the board of directors of the Montex Corporation, at which A. W. Terpening, its president, was removed on account of mismanagement of its affairs. At that time the corporation was in immediate danger of insolvency because of such mismanagement, and an executive committee was appointed with authority to exercise the powers of the board of directors and to take steps necessary to finance the business and to settle and adjust all claims against the corporation. On September 4, 1928, a stockholders' meeting was held in obedience to a call of the executive committee. At that meeting a resolution was adopted reciting that numerous claims were being made for the issuance of capital stock, which were of doubtful validity; that all such claims should be submitted to the executive committee, who would investigate the same, and that none of those claims should be allowed unless supported by authentic proof of its justness. A further resolution was passed em-

powering the board of directors to employ an experienced engineer to make a complete survey of the corporation's plant and submit a report to the board showing an estimate of expenses necessary to put the corporation's oil plant in proper condition to produce gasoline in paying quantities; and that if the directors should find that the plant could be operated profitably, then they were authorized to refund the company's present indebtedness by the issuance of debenture notes secured by a lien upon the company's assets, payable upon such terms and conditions as might be fixed by the board, such issue to be of a sufficient amount to cover all present indebtedness of the company, together with expenses necessary to put the plant on a paying basis; and all claims of indebtedness to be liquidated "on a pro rata basis."

On the day following, to wit, September 5th, the board of directors held a meeting at which a resolution was adopted authorizing the officers and the executive committee of the corporation to cause to be issued promissory notes of the corporation in the respective sums of $50 and $100 each and aggregating $50,000, to be secured by a deed of trust executed by the officers upon all the assets of the corporation, the notes so secured to be sold with a preference right to the stockholders to purchase the same "and the proceeds thereof to be used to liquidate the present outstanding indebtedness of this company on a *pro rata basis*." (Italics ours.) The resolution further provided that the officers should allow no claim for stock to be issued or for indebtedness incurred under the prior management of the business unless such claim be first submitted to the board of directors and satisfactory proof of its justness be made.

On September 15, 1928, a deed of trust was executed by the president in the name of the Montex Corporation as mortgagor covering all of its assets to secure the payment of 600 promissory notes in denominations of $50 each, but only 300 of those notes were in fact issued, and they and the deed of trust given to secure the same were hypothecated to Mrs. Alta Dockery as collateral security for an unsecured promissory note held by her against the corporation dated June 14, 1928, for the principal sum of $4,227.27, payable on demand, which was executed in the name of the corporation by A. W. Terpening, its president, and also by him as surety. Mrs. Dockery was present at the stockholders' meeting already mentioned, both in person and by attorney, and at that time held 5,000 shares of the capital stock of the corporation. She was not present at the meeting of the board of directors, but the deed of trust taken by her as collateral security contained the recital that it was executed "*in pursuance of authority of the stockholders in meeting assembled and in pursuance of a resolution of the board of directors as appears in the minutes of said corporation.*" (Italics ours.)

At the time of the execution of that deed of trust and the hypothecation of the notes to Mrs. Dockery, the corporation was in imminent danger of insolvency.

Mrs. Dockery's claim was never submitted to the board of directors for their approval and was never approved by the board.

On December 4, 1928, Charles Hanan, Clay Cooke, George Mullenhauer, and Ernest Thompson, who were stockholders in the corporation, instituted this suit in the district court of Tarrant county against the Montex Corporation and others to recover a personal judgment against the corporation for debts due the respective plaintiffs in stated amounts. In plaintiffs' petition it was alleged that the affairs of the corporation had been mismanaged by its officers, who had wrongfully converted to their own use its assets, and who had conspired together and with others to defraud the corporation and its stockholders and creditors out of the remaining assets on hand; and plaintiffs prayed for the appointment of a receiver to take charge of the estate. That application was granted and Joe B. Wills was appointed receiver. Thereafter, under an order of court, the receiver sold all the assets of the corporation for the sum of $20,000; the receiver and Mrs. Dockery agreeing that Mrs. Dockery should have the same lien against the proceeds of the sale as she might establish against the assets covered by the deed of trust.

On December 6, 1928, Hon. Ernest May was appointed master in chancery, "with full power and authority to hear and report to the court on all claims against the Montex Corporation, defendant herein, and to hear and report his findings upon all claims of the Montex Corporation against or in favor of any person, firm or corporation, and with full authority to that end to summon witnesses and to take testimony under oath and to examine the books, papers and vouchers and other documents pertaining to any such claim."

That order further provided: "That the receiver issue notices to all creditors of the Montex Corporation known to him, or shown by the books of said corporation, to file their claims with the receiver or by intervention herein, within 60 days from this date and that notice likewise be published in the Fort Worth Star-Telegram to all creditors of said corporation of the appointment of a receiver, and that claims should be filed within 60 days from this date."

On May 18, 1929, Mrs. Alta Dockery filed her plea of intervention in the suit, seeking a recovery against the corporation and the receiver for the amount of the note held by her in the sum of $4,227.27, already noted, and establishing the alleged priority of her lien on the proceeds of the sale of the assets, which

she alleged had been given as collateral security for the note.

The Montex Corporation and the receiver filed an answer to the intervention, in which it was alleged that the deed of trust was executed without authority of the stockholders or board of directors and without any consideration therefor.

On February 4, 1930, the master filed his report upon that intervention, reciting that after due notice a hearing was had upon the Dockery claim and that the master had made findings thereon as follows: That the note held by Alta Dockery for $4,227.27, dated June 14, 1928, executed by the corporation and also by A. W. Terpening as surety, was supported by a valid consideration and was given to the payee by the corporation on account of advances made by her; that the 300 notes described in the deed of trust and assigned to her were assigned as collateral security for the principal note just mentioned; and that she was entitled to judgment for the amount shown to be due on the principal note. The report further recites that Mrs. Dockery in her pleading had prayed for judgment establishing the priority of her lien on the proceeds of the sale made by the receiver; but the report did not contain any findings as to whether or not she was entitled to such a decree. The report also included findings on other claims not necessary to be noted.

On June 2, 1930, the court entered an order approving the finding by the master upon the Dockery claim, and directing Joe B. Wills, the receiver, to pay over to her the amount allowed in the master's report, with modification made by the court as to interest, on condition that she would execute a bond with two or more good and sufficient sureties, payable to the receiver in double the amount of the award, conditioned to hold the receiver harmless against any claims of L. R. Barton, another intervener, arising by reason of such payment to Mrs. Dockery. Mrs. Dockery has never executed that bond.

On June 5, 1930, the plaintiffs in the case, together with G. H. Kendrick and R. A. Stuart as interveners, filed objections to the allowance of the claim of Alta Dockery and other interveners, and prayed that the allowances so made be set aside and the claims be again referred to the master for further hearing. It was alleged that the petitioners were unsecured creditors of the corporation in an aggregate sum of $15,000, and that the proceeds of the sale of the assets would be insufficient to pay all claims in full if the Dockery and other claims were allowed as preference claims. They further alleged that the Dockery claim had no just standing as a preferred claim since it was an unsecured claim, and that the deed of trust held by her as collateral security was executed without authority of the corporation and in violation of the resolutions of the stockholders and board of directors expressly requiring that the proceeds realized on debenture notes for which the deed of trust was executed, should be used in satisfaction of the debts of the corporation on a pro rata basis. It was further alleged that those defensive matters were never presented to the master upon the hearing of the intervention, and that the petitioners had had no prior notice that either of the interveners would claim preference liens on the assets and therefore had no opportunity to be heard as to that issue.

On June 14, 1930, Mrs. Dockery filed a reply to that petition, alleging that the former order of the court was res adjudicata and that the petitioners were parties to the suit at the time of the former hearing and were therefore charged with notice and had had actual notice of said hearing before the same occurred.

On June 14, 1930, the court entered an order dismissing the action of the petitioners because the same came too late, in that the attorney for the petitioners was present when that intervention was heard and determined, by the master. And in that connection the court further decreed that the Alta Dockery claim be allowed as per the former order. The petitioners excepted to that ruling and gave notice of appeal to the Court of Civil Appeals; and by order of the court it was provided that the judgment in favor of Mrs. Dockery would be suspended for thirty days for the petitioners to perfect an appeal, but that if the appeal be not perfected within that period of time, then the judgment in favor of Mrs. Dockery should be paid without further orders of court.

The petitioners did not perfect an appeal from that order.

On July 22, 1930, plaintiffs in the case filed their first amended original petition in lieu of the original petition, with additional allegations of mismanagement by the officers in charge of the corporation as the grounds for appointing a receiver, with more detailed statements of their claims of indebtedness against the corporation, but not challenging the order of the court last mentioned.

On July 25, 1930, the master filed what he designated as his final report, purporting to cover claims which were not covered by his former reports. In that report there were findings in favor of the plaintiffs for certain indebtedness against the corporation asserted by them in their pleadings. The report also included favorable findings on the claims of other interveners and rejecting other claims. The report contains this further statement: "I have heretofore filed reports covering all secured claims or claims entitled to priority for any reason."

On July 25, 1930, the court entered an order reciting the filing of the foregoing final report of the master upon the claims and in-

terventions filed in the cause and allowing to all parties to the suit and interveners and claimants twenty days from and after the date of that order within which to file exceptions to the master's report and to the report theretofore made by the .receiver.

No such exceptions were filed within the period so fixed.

On September 20, 1930, Mrs. Alta Dockery filed an application to the court reciting .the former hearings of the master in chancery and the former orders of the court approving her claim, and praying for an order directing the receiver to pay her claim which had theretofore been adjudicated, with further allegations that the former judgment of the court in her favor had become final.

On October 15, 1930, Charles Hanan, George Mullenhauer, Ernest Johnson, G. H. Kendrick, Clay Cooke, and R. A. Stuart, styling themselves interveners, filed a petition with the court seeking to set aside the former order of the court allowing the Dockery claim as a preferred claim and praying for a rehearing of that claim before the master in chancery. As grounds for the relief sought, the resolutions passed by the stockholders at the stockholders' meeting and by the board of directors were set out, according to which it was expressly - provided that the proceeds arising by reason of the execution of the deed of trust should be used in liquidation of the corporation's debts on a pro rata basis, and that the action of the officers of the corporation in so using the same as to give to the Dockery claim, which was an unsecured claim, a preference over other unsecured claims, was without authority of the corporation and was therefore void. It was further alleged that Mrs. Alta Dockery took such collateral with full knowledge that the same was not authorized by the corporation and without paying any consideration therefor, and that the receiver, through negligence, had failed to present to the master at said hearing the foregoing defensive matters, which would have defeated a preference to the Dockery claim ; and that by reason of all of those facts, the judgment allowing the Dockery claim as a preference claim was procured by fraud and should therefore be set aside and annulled. There were further allegations that the petitioners had no prior notice of the hearing, and that the approval thereof was without any evidence to show that it should be allowed as a preference claim to other unsecured debts of the corporation. The insolvency of the Montex Corporation at the time of the execution of the deed of trust and the passage of the resolutions of the stockholders and directors was alleged; also, that the Dockery claim was never presented to the executive committee nor authenticated as required by the resolutions.

On October 16, 1930, an answer to that petition was. filed by Mrs. Alta Dockery, in which the former judgment of the court in her favor was again pleaded as res adjudicata, and praying for another order establishing the priority of. her claim as against other creditors.

On October 16, 1930, the receiver filed an answer to that pleading by Mrs. Dockery, alleging that the deed of trust and the hypothecation of the 300 notes was without authority of the corporation and in contravention of the resolutions of the stockholders and board of directors pertaining thereto.

The matters presented by those pleadings were all referred to the master in chancery for another hearing thereon, and on October 22, 1930, he filed his report showing his findings thereon. The report gives a full history of all the former proceedings, including the resolutions passed at the stockholders' meeting and the subsequent resolutions by the board of directors, from both of which it appeared that the proceeds realized from the execution of the deed of trust were to be used in payment of creditors of the corporation on a pro rata basis; and findings that at the time she took the collateral as security, Mrs. Dockery knew or was charged with knowledge that the notes which she took as collateral to her existing indebtedness were authorized by the stockholders only for the purpose of refunding all of the indebtedness of the corporation without preference to any particular creditor and that she took such notes at her peril. The master further found that when the deed of trust was executed, and the 300 notes described therein were delivered to Mrs. Dockery as collateral security for her unsecured note then held against the corporation, the Montex Corporation was "financially embarrassed and in imminent danger of insolvency, if not actually insolvent, and the fact was understood by everybody concerned," and the report includes this further finding: "In bankruptcy proceedings later instituted by certain creditors, the intervener, Mrs. Dockery, joined the corporation in pleading that the deed of trust, above referred to, did not create a preference, but was intended for the benefit of all creditors."

Upon the facts so found the master recommended that all unsecured claims against the corporation that were outstanding at the time the deed of trust was executed—which included the claims of the contestants here—were entitled to payment on the same basis with the Dockery claim; in other words, that Mrs. Dockery's claim of a prior lien on the property covered by the deed of trust and the proceeds of sale thereof should be rejected. Among the reasons given in support of the recommendation were that such a judgment would accomplish the intention of the stockholders and directors of the corporation, and that having taken the deed of trust with notice that same was executed

without authority of the corporation, Mrs. Dockery was in no position in equity to claim the preferential security purported to be given by that instrument; and that in equity she should be considered as holding the security in trust for all other creditors of the same class, under the doctrine announced in 14–a C. J. p. 918.

On January 11, 1931, Mrs. Dockery excepted to the last findings of the master in chancery and specially pleaded the former orders of the court approving her claim as a preference claim as res adjudicata of the findings so made by the master.

On May 10, 1931, the court overruled all exceptions to the master's report and entered a final judgment approving the same, setting aside the former orders made on June 2, 1930, and June 14, 1930, with respect to the Alta Dockery claim, and decreeing that that claim should be classified and paid as an unsecured claim and on a pro rata basis with other claims of the same class.

Mrs. Alta Dockery has prosecuted this appeal from that judgment.

Her contention is that since the former judgment of the court approving her claim as having priority over other claims against the proceeds of the sale of the assets was rendered at a former term of the court and no appeal was prosecuted therefrom, the same constituted res adjudicata and was therefore a complete bar to the last proceedings noted. That contention is the controlling question involved in all of the assignments presented here.

■ No doubt the general rule is as announced in many authorities cited by appellant, that a judgment by a court of competent jurisdiction acquired over the subject-matter and the parties to a suit is a bar to a litigation of the same issues between the same parties and their privies in another suit. It is also true that, generally speaking, such a judgment becomes final after the term of court has ended if no appeal is prosecuted therefrom within the time required by the statutes.

But appellees have filed briefs in which authorities are cited to support the contention made by them that the former judgment approving the Dockery claim and ordering its payment by the receiver within a specified time was not a final judgment. Among others are the following:

"As a general rule, until a receiver has accounted for the receipt and disbursement of moneys by him, no order by the court should be made for the distribution thereof. The fund arising from all sources should be held under the direction of the court until the court shall upon final hearing direct its application to be made." 34 Cyc. p. 372.

"Where an order directing a receiver to pay a certain claim out of any money in his hands available for that purpose is made prior to final decree fixing priorities among creditors and ordering distribution, such decree supersedes the order." Id. p. 374.

And to those the following may be added:

"Having decreed priority to certain claims, it may in later orders postpone their priority by ordering for subsequent claims an equal or superior rank, and the creditors when they obtain an order of priority, take it with the understanding that the court has power to act thus." 53 Corpus Juris, 297.

And in 53 Corpus Juris, p. 310, it is said that no general order of distribution of an estate should be made until a receiver has rendered a final accounting of his receivership, and that no particular claims against the estate administered by the receiver should be ordered paid "until the status of all claims and their order of priority has been finally determined where such determination may affect the payments to be made on such claims."

■ However, without undertaking to determine whether or not the former orders of the court approving the Dockery claim as a preference claim was a bar to the action to set them aside, and independently of that issue, we have reached the conclusion that the final judgment of the trial court, setting aside those orders and decreeing that the Dockery claim be paid on a pro rata basis with other unsecured claims, should be sustained because the preference given to the Dockery claim by those former orders was manifestly unjust to other claims of the same class and was contrary to the principles of equity which usually govern in the final settlement of insolvent estates. The outstanding facts supporting that conclusion are the procurement by Mrs. Dockery of the collateral as security for her unsecured note, with at least constructive notice to her and the president of the corporation that that transaction was in direct violation of the terms of the resolutions of the stockholders and directors and without authority of the president to accord to her such preferential right, and without parting with any consideration therefor, and with intention of herself and the president thereby to secure for her a preference lien over other creditors of the same class and entitled to share with her on an equal basis. Nor should such other creditors be chargeable with the unexplained and manifestly negligent failure of the receiver—who was their legal representative and charged with the duty to protect their interests—to except to the former findings by the master and to take proper steps at proper times to set aside the orders of court approving the same and allowing a preference to the Dockery claim. And we do not believe that the absence of any finding by the master that

the president of the corporation and Mrs. Dockery acted with fraudulent intent to procure such preference is any obstacle to setting aside those former orders. 21 C. J. p. 48; 34 C. J. p. 440, 470, and 520; Moffat v. U. S., 112 U. S. 24, 5 S. Ct. 10, 28 L. Ed. 623; Harrigan v. Gilchrist, 121 Wis. 127, 99 N. W. 909.

Furthermore, it is to be noted that as found by the master, in answer to bankruptcy proceedings filed against the Montex Corporation on the ground that by the deed of trust a preference lien had been given in favor of Mrs. Dockery, the attorney for the latter appeared in that court and assisted in defeating that application upon allegations that no such preference had been created by the deed of trust. We believe that such action on the part of Mrs. Dockery amounted to an estoppel and waiver of her right to thereafter procure a decree in this suit according to her priority of lien on the assets, as against other unsecured creditors. We quote the following from the opinion of Chief Justice Phillips in the case of Equitable Life Assurance Society v. Ellis, 105 Tex. 526, the quotation being found on page 538, 147 S. W. 1152, 1157, 152 S. W. 625: "Waiver is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new agreement or be supported by a consideration, nor is it essential that it be based upon an estoppel." And the facts recited clearly involve the elements of estoppel as well as of waiver.

For the reasons indicated, all assignments of error are overruled, and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

The statement of facts shows that the last report filed by the master in chancery was introduced in evidence. That report embodied findings of fact by the master, including the following: The stockholders' meeting of the Montex Corporation on September 4, 1928, and the resolution passed at that meeting, as set out in our original opinion, authorized the board of directors to "refund the company's present indebtedness by the issuance of serial debenture notes, secured by a lien on the company's assets, and payable upon such terms and conditions and bearing such rate of interest as may be fixed by the board of directors, said issue to include all the present indebtedness of the company," and the fact that Alta Dockery was present at that meeting by her attorney and proxy, E. M. Hyder. Also the resolution passed by the board of directors on September 5, 1928, authorizing the officers of the corporation to issue promissory notes of the cor-

poration not to exceed the aggregate of $50,000, and to execute a deed of trust to secure the same upon all the assets of the corporation, and the notes and proceeds thereof to be used to liquidate the present outstanding indebtedness of the company "on a pro rata basis." Also the further finding that a deed of trust was executed on September 15, 1928, by those officers; that its execution was "in pursuance of the authority of the stockholders in meeting assembled and in pursuance of a resolution of the board of directors as appears in the minutes of said corporation"; and the deed of trust was executed to secure the payment of 600 notes signed by the Montex Corporation, each for the sum of $50; with the further finding that "this deed of trust was probably prepared by Mrs. Dockery's attorney and shows knowledge of the directors' resolution." Also the further finding that on September 28, 1928, 300 of those notes were indorsed and delivered to Mrs. Alta Dockery and the sole consideration for such delivery was as collateral for the prior indebtedness of the corporation to Mrs. Dockery evidenced by a promissory note of $4,227.27. Also that the Montex Corporation was during all this time financially embarrassed and in imminent danger of insolvency, if not actually insolvent, and that fact was well known and understood by everybody concerned. There was a further finding that in the bankruptcy proceedings later instituted by certain creditors, Mrs. Dockery, as intervener, joined the corporation in pleading that the deed of trust above referred to did not create a preference but was intended for the benefit of all creditors. Following a recital of those facts, the master further found that Mrs. Dockery having participated in the stockholders' meeting, on September 4, 1928, knew, or was charged with knowledge, that the notes which she took as collateral for her existing indebtedness were authorized by the stockholders only for the purpose of refunding all the indebtedness of the corporation, without preference to any particular creditor. That she had notice that when the vice president of the corporation delivered to her the 300 collateral notes secured by deed of trust upon all the property of the corporation, he was acting beyond the scope of the purpose for which the notes and deed of trust were authorized by the stockholders.

The facts so found by the master and introduced in evidence were sufficient to sustain the attack made upon the former judgments of the trial court, classifying the Dockery claim as a preferred claim, and ordering the payment of the same as such, on the ground that those judgments were procured by fraud, and therefore the judgment from which this appeal is prosecuted must be sustained on that ground, even though the former judgments of the court fixing the Dockery claim as a preferred claim in accordance with the recom-

mendation of the master be construed as final judgments and conclusive as against all attacks except fraud, accident, or mistake inducing their procurement.

Accordingly, appellant's motion for rehearing is overruled.