## In re AKTIEBOLAGET KREUGER & TOLL.

District Court, S. D. New York.
Oct. 4, 1937.

Sullivan & Cromwell, of New York City (John Foster Dulles, of New York City, of counsel), for petitioner.

Eugene Untermyer, of New York City, for Independent Protective Committee.

Hunt, Hill & Betts, of New York City (Robert M. Jackson, of New York City, of counsel), for Harry Greenwood and other certificate holders.

Winthrop, Stimson, Putnam & Roberts, of New York City (Jonas J. Shapiro and George Roberts, both of New York City, of counsel), for trustee.

Spence, Hopkins, Walser & Hotchkiss, of New York City (Kenneth M. Spence, of New York City, of counsel), for Lee, Higginson Trust Company.

Isidor M. Katz, of New York City, for Anna May Ellrodt.

Max H. Weinstein, of New York City, and Louis R. Patur, of Brooklyn, N. Y., for American certificate holders.

MANDELBAUM, District Judge.

The petitioner, Marine Midland Trust Company of New York, seeks a review of an order of a referee in bankruptcy, dated April 1, 1937, overruling certain objections to certain claims against the bankrupt.

The pertinent events leading up to the filing of the claims herein are as follows:

The bankrupt, Aktiebolaget Kreuger & Toll, also known as Kreuger & Toll Company, was a limited liability company, organized and registered under the Swedish Companies Act of the Kingdom of Sweden. The capital structure of the company may be said to have had the following classification: (a) Ordinary shares (the equivalent of common stock in a New York corporation); (b) participating debentures; (c) 5 per cent. secured sinking fund gold debentures (the issue represented by the petitioner).

The "Participating Debentures" (class b) issued by the bankrupt were originally designed for listing in London and Stockholm. It was thereafter decided to market these debentures in the United States. However, the same being in Continental form and not meeting the requirements of the New York Stock Exchange for listing, the usual device was resorted to in which a deposit agreement, dated September 1, 1928, was entered into between the bankrupt, Lee, Higginson & Co., as fiscal agent, Lee, Higginson Trust Company (hereafter called Lee Higginson) as depository. Pursuant to this agreement, Lee Higginson issued what were known as "American Certificates," having a par or face value of 20 Swedish kroner. So that, these "American Certificates" represented a share of the "Participating Debentures" which had been deposited by the bankrupt with Lee Higginson and which were merely evidence of the beneficial interest of the holders of them in the promise of the bankrupt to pay their trustee, Lee Higginson.

In March, 1932, proceedings were instituted in Sweden to place Kreuger & Toll in liquidation and, pursuant to Swedish Bankruptcy Law, Swedish liquidators were appointed. Although the bankrupt was without residence, domicile or physical property in this country, some American creditors owning $3,000 principal amount of the 5 per cent. "Secured Debentures" (class c) filed a petition in bankruptcy, pursuant to our Bankruptcy Act (11 U.S.C. A. § 1 et seq.) in June, 1932.

The issue of whether or not there should be an American adjudication came before Judge Julian M. Mack of this court.[1] It is important to note that the adjudication was opposed by the Swedish liquidators and by the principal creditor groups in the United States, England, France, and Switzerland. It seems that their chief objection was that the bankruptcy, being an international one, should be unified and concentrated in Stockholm. At the conclusion of the argument, Judge Mack said:

"Well gentlemen I shall adjourn this hearing on Mr. Auchincloss' suggestion to give time for him to communicate with the administrators in Sweden of this company with an explanation of the attitude of this court in regard to this matter, *namely that any action taken by this court will be taken with a view to the most earnest cooperation with the authorities in Sweden in the interest of all creditors* and that any administration of the property in America of the Kreuger & Toll Company would be *without any thought of preferential treatment of American creditors unless indeed preferential treatment were given in Sweden as against American creditors* and the Court would earnestly hope that in Sweden all creditors would be treated alike as to the assets of this company so that this court dealing with American assets *would be not only justified but morally and doubtlessly legally compelled to accord the same treatment to Swedish and other creditors as it would accord to American creditors.*" (Italics by the court.) Page 10 of petitioner's brief.

After a lapse of several months, and apparently relying upon Judge Mack's statement, the objections to the American

**1** No opinion for publication.

bankruptcy were dropped and the Swedish liquidators consented to the adjudication. It is further significant that, indicative of the promised co-operation, Mr. Auchincloss, representing the Swedish liquidators in New York, became the American trustee in bankruptcy (later succeeded by Mr. Greenbaum). That this co-operation has proven beneficial to the estate is evidenced by the fact that there is now accumulated in the American bankruptcy estate a sum of about $3,500,000 resulting from the prosecution of various claims.

The claims against the bankrupt objected to in this proceeding, for convenience, will be grouped as follows:

### Group A (1, 2, 3).

(1) An amended proof of claim, dated February 4, 1933, filed by Lee Higginson, as trustee, for principal amounting to $40,-279,783.60 (this claim represents the face amount of all "American Certificates").

(2) An amended proof of claim, dated December 21, 1933, filed by Lee Higginson, as trustee, for interest, amounting to $2,-013,989.18, at the rate of 5 per cent. per annum, claimed to be due from January 1, 1931, to December 31, 1931 (this interest for the year 1931, according to the tenor of the "Participating Debentures" and "American Certificates," was payable July 1, 1932).

(3) An amended proof of claim, dated December 21, 1933, filed by Lee Higginson, as trustee, for interest amounting to $1,-208,393.49, claimed to be due from January 1, 1932, to August 6, 1932, which is the date of the American adjudication in bankruptcy.

### Group B (1, 2).

(1) Claims by individual owners of the "Participating Debentures" purchased abroad and not deposited with Lee Higginson, amounting to about $40,000.

(2) Claims by other holders of "American Certificates" representing interests in the "Participating Debentures" deposited with Lee Higginson, as trustee, amounting to about $11,000 (these claims in reality are duplications of those filed by Lee Higginson, as trustee).

Out of the nine objections to the above claims filed by the trustee in bankruptcy, only four were passed upon by the referee (Nos. 1, 2, 7, and 8) and those are now before this court for review. In essence, the objections to the claims filed are:

Objection 1. That the holders of "American Certificates" may not file any claim because any claim that they may have is to be represented by the claim filed by Lee Higginson, as trustee; and that if there be any distribution, they will receive it through Lee Higginson, as trustee.

Objection 2. That the claims are not provable claims in bankruptcy under section 63 (a) (1) of our Bankruptcy Act (as amended, 11 U.S.C.A. § 103(a)(1); that the "Participating Debentures" were not debts owned by Kreuger & Toll at the time of the bankruptcy, by reason of the provision for the payment out of the specified fund, if any such fund existed.

Objection 7. That in any event these claims, both "Participating Debentures" and "American Certificates," should be subordinated, because the contract itself provides for subordination (article 6 of the "Participating Debentures").

Objection 8. That the claims should be subordinated because of the facts and circumstances under which the indebtedness of the bankrupt represented by the other claims unsecured in whole or in part against it, or some of them, were created.

The referee, in overruling the objections, decided that the nature of the obligation evidenced by the "Participating Debentures" and their rank with regard to the other obligations of Kreuger & Toll is a matter to be determined in accordance with New York law, basing his conclusion upon the ground that the deposit agreement of September 1, 1928 (section 20), provided that its terms were to be construed by the laws of New York. The referee disregarded the contention of the petitioner herein that decisions by the highest court of Sweden on what is claimed is the precise question now before this court is res judicata and therefore decisive of the issues respecting the "Participating Debentures." The referee then construed clause 6 of the "Participating Debentures" and held them to be evidences of debt, rather than stock; that liquidation therein referred to connotes voluntary liquidation which occurs only when the obligor is solvent; and he concludes finally that the "Participating Debentures" as to par and "interest" rank equally with the other creditors and are entitled to receive out of the same fund without any precedence over each other (par passu).

First and foremost an examination must be made of the proceedings in Swe-

den in order to determine the questions decided by the Swedish courts.

On August 2, 1933, Lee Higginson, as trustee, and depository under the deposit agreement, filed a claim through its attorney at law in the District Court of Stockholm for bankruptcy matters for payment of the *par value of the debentures deposited with Lee Higginson and accrued interest from December 31, 1930, to May 22, 1932, the date of the Swedish bankruptcy.* Payments on both items were claimed *on the same basis as the nonpreferred claims against the company.* Exhibit 13.

Subsequently, Lee Higginson abandoned its claim with respect to the par value of the debentures and by a supplemental claim requested distribution as to par value *after* the nonpreferred creditors. Exhibit 14.

Thereafter, in a proceeding commenced in the City Court of Stockholm, Lee Higginson litigated against the Swedish liquidators and a Swedish creditor the question of ranking the *interest claim* on the same basis as nonpreferred creditors. Again, Lee Higginson further narrowed its interest claim by abandoning its claim for 1932 interest, contending in effect that the only claim asserted by it was for interest for the year 1931.

Clause 6 of the "Participating Debentures" reads as follows: "6. In the event of liquidation all Debentures issued simultaneously herewith or subsequently as provided in clause 4 shall be redeemed out of the assets of the Company at a price to be determined according to the provisions of clause 5 above, before any distribution of such assets is made to the shareholders, but after all other debts of the Company have been paid. In the event of liquidation the three months for which the quotations are to be used for deciding the price of redemption in accordance with clause 5 shall be those immediately preceding the month in which the Company is legally placed in liquidation."

The City Court of Sweden, in passing upon the Lee Higginson claim for 1931 interest, construed the above clause, holding: (a) That, for the purposes of liquidation in bankruptcy, the said "Participating Debentures" ranked between the stock and the other debts of the company; (b) that "interest" could obtain no higher ranking than the par itself, and accordingly dismissed the claim.

Thereafter, Lee Higginson instituted two successive appeals from the adverse City Court decision and finally the Supreme Court, which is the highest court of Sweden, unanimously affirmed the rulings of the lower courts. Judgment of Supreme Court of Sweden, Court of Second Appeal, dated December 30, 1935.

Paraphrasing the decisions of the Swedish courts, they may be said to have decided that, on liquidation in bankruptcy, holders of the "Participating Debentures" were to be paid out of the assets of the company *before* shareholders, but *after* all the other debts of the company had been paid.

On the basis of what was decided by the Swedish courts, it is urged that the decisions did not cover par as well as interest. It is my belief that the answer does not require much discussion. The withdrawal of the claim for principal by Lee Higginson was a voluntary act obviously intending to differentiate between its claim for interest from that of principal. The Swedish courts specifically held *that interest did not rank because it was in the same position as par, which did not rank.*

In Grubb v. Public Utilities Commission of Ohio, 281 U.S. 470, at pages 478 and 479, 50 S.Ct. 374, 378, 74 L.Ed. 972, the Supreme Court, in applying the principle of res judicata, said:

"The thing presented for adjudication in the case in the state court was the validity of the order, and it was incumbent on the appellant to present in support of his asserted right of attack every available ground of which he had knowledge. He was not at liberty to prosecute that right by piece-meal, as by presenting a part only of the available grounds and reserving others for another suit, if failing in that. [Cases cited.]

"As the ground just described was available but not put forward the appellant must abide by the rule that a judgment upon the merits in one suit is res judicata in another where the parties and the subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end. [Cases cited.]"

I am of the opinion that the precise questions presented at bar have heretofore been decided adversely to Lee Higginson. The all important issue for consideration now arises as to the legal effect this court shall

give to the judgment of the highest court of Sweden.

The petitioner relies on a two-fold theory to support its contention that the referee erred in overruling the objections to the claims. They are namely: (1) The claim of Lee Higginson is barred through the application of the doctrine of res judicata; (2) res judicata as applied to foreign judgments on a comity basis between nations bars the aforesaid claim.

Both propositions will be considered in the order above named.

■ It is elementary, and needs no citation of authority, that to constitute "res judicata" the right to relief in one suit must rest upon the same point or question which in essence and substance was litigated and determined in the first suit, and in such a case the parties and those *in privity with them* are concluded, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.

■ While at bar all the other elements are present to constitute res judicata, it is asserted that there is no privity between the Swedish liquidators in bankruptcy and the American trustee in bankruptcy. If this element is lacking, then, of course, this doctrine, in the strict legal sense, is inapplicable.

The petitioner candidly concedes that the point is of novel impression. The court, too, has been unable to discover an authority directly in point. The referee has concluded that there is no privity as between two administrations of the same bankrupt. Chief reliance is placed by him upon the cases of Brown v. Fletcher's Estate, 210 U.S. 82, 28 S.Ct. 702, 52 L.Ed. 966, and Ingersoll v. Coram, 211 U.S. 335, 29 S.Ct. 92, 53 L.Ed. 208. Both cases follow the well-established rule in decedents' estates, that there is no privity between administrators appointed in different states, since the authority of an executor or administrator appointed in one state does not extend to the property or administration in another.

A more recent expression of this rule may be found in American Law Institute, Restatement of the Law of Conflict of Laws, §§ 506, 507, 511, and comment, where it appears that the rule previously enunciated is considered modified. The Restatement apparently recognizes a distinction between an administrator and an executor of a decedent's estate and states the rule to be (with some modifications) that there is privity between executors of the same decedent's estate, whereas no privity exists between the administrators thereof.

Not having been able to discover any decided cases dealing with the question of privity between trustees in bankruptcy, we are compelled to depend upon further analogies for guidance.

Let us take, for example, a receiver, appointed by a court to conserve an estate pending litigation or to administer an estate in bankruptcy. He undoubtedly possesses a great many of the characteristics inherent in a trustee in bankruptcy. They (receiver and trustee), like other fiduciaries appointed by a court, are to name but one of their many likenesses, subject to account only to the court of their appointment. Thus, in American Law Institute, Restatement of the Law of Conflict of Laws, in its discussion of "Receiverships," specifically says in section 570: "If a person asserting a claim against an association of which a receiver has been appointed sues a receiver therefor, and judgment is for the receiver, the rendition of such judgment *will not preclude* the claimant from suing a receiver of the same association in another state upon the same claim." (See §§ 563, 569.)

I am constrained to decide that, the courts having declined to accord privity between administrators and receivers, I cannot with good reason extend the application of the doctrine, by omitting a trustee in bankruptcy (essentially similar to these other fiduciaries) from that category.

I am not unmindful, in making this ruling, of the recent case of Chicago, R. I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 423, 70 L.Ed. 757, 53 A.L.R. 1265, cited by the petitioner. There, the court decided that there was sufficient identity or privity of parties between the widow of a decedent, impleaded under the state law, and the administrator, of the decedent, impleaded under the federal law, to invoke the doctrine of res judicata. While the court, in the course of its opinion, did say "that (identity of parties) must be determined as a matter of substance and not of mere form," it must be borne in mind that the right of the administrator to sue, pursuant to statutory authority, *was for the sole benefit of the widow* and not in his

own right, or for his own benefit or that of the estate. At bar, the trustee in bankruptcy in this country is not ancillary, subsidiary, or dependent upon the Swedish bankruptcy, but is entirely independent, and subject to the jurisdiction of this court only.

Although the court is in accord with the referee on this first proposition, does the petitioner's position on the question of international comity fare any better? This depends upon the application of the principles laid down in Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95, to the facts at bar. In the Hilton Case, the plaintiffs, citizens of France, brought an action in this country on a judgment recovered by them against the defendants, citizens of this country, in the courts of France. The foreign courts had jurisdiction over the persons and subject matter of the action, and, with respect to the judgment obtained there, no fraud was alleged, except in the particulars contested and considered by the French courts. The question for decision was whether, under the foregoing facts and in the absence of a treaty or act of Congress, the judgment was re-examinable on the merits. By a bare majority of the court, it was held (159 U.S. 113, at page 227, 16 S.Ct. 139, 168, 40 L.Ed. 95): "The reasonable, if not the necessary, conclusion appears to us to be that judgments rendered in France, or in any other foreign country, by the laws of which our own judgments are reviewable upon the merits, are not entitled to full credit and conclusive effect when sued upon in this country, but are prima facie evidence only of the justice of the plaintiffs' claim."

■ This case has been interpreted to mean that the principle of comity is extended by the courts of this country to the judgments of the courts of a foreign country to the same extent that courts in the foreign country extend the principle to judgments of the courts of this country. Kessler v. Armstrong Cork Co. (C.C.A.) 158 F. 744; Alaska Commercial Co. v. Debney (C.C.A.) 144 F. 1; Strauss v. Conried (C.C.) 121 F. 199; Gioe v. Westervelt (C.C.) 116 F. 1017.

Judge Learned Hand, now of the Circuit Court of Appeals in this circuit, had occasion to comment upon Hilton v. Guyot, while sitting as a district judge. In a later case than ones above cited, he further clarified that case by stating: "Whatever may be thought of that decision, [Hilton v. Guyot], the court certainly did not mean to hold that an American court was to recognize no obligations or duties arising elsewhere until it appeared that the sovereign of the locus reciprocally recognized similar obligations existing here. *That doctrine I am happy to say is not a part of American jurisprudence.*" (Italics by the court.) Direction der Disconto-Gesellschaft v. U. S. Steel Corporation (D.C.) 300 F. 741, 747, affirmed 267 U.S. 22, 45 S.Ct. 207, 69 L.Ed. 495.

■ Whether we accept the majority opinion (that the judgment is prima facie evidence) or the minority opinion (which deems the judgment conclusive), I am convinced that at bar a far stronger case for recognition of the Swedish judgment is presented than in Hilton v. Guyot. The reasons whereby I reach this conclusion will be presently stated. What recognition does the kingdom of Sweden accord to judgments of our highest courts? Proof on this question has been obviated by stipulation between counsel. It has been agreed that under the law of Sweden judgments of American courts are not in the strict legal res judicata, but only evidence; however, that, if the American judgment was that of a court of last appeal and involved a question of American law, the courts of Sweden, although not conclusively bound by such judgment, would in all probability consider themselves bound to follow it with respect to the question of American law, in the absence of clear and convincing evidence that the question was erroneously decided by the American court.

No question is here raised as to the jurisdiction of the foreign court, nor as to the propriety and impartiality of the proceedings as between Americans and Swedish subjects. It is unquestioned that there was opportunity for a fair trial and appeal. Cf. Compagnie du Port de Rio de Janeiro v. Mead Morrison Mfg. Co. (D. C.) 19 F.(2d) 163, 167. Neither is it charged that the proceedings there were tainted with fraud. I further fail to find any clear or convincing evidence that the question was erroneously decided by the Swedish court. And further, the fact that Lee Higginson invoked the jurisdiction of the Swedish courts distinguishes this case from Hilton v. Guyot, and, in my opinion, may be deemed an exception to the rule laid

970

down in that case. I am strengthened in this by the decision in Harrison v. Triplex Gold Mines, 33 F.(2d) 667, decided by the Circuit Court of Appeals, First Circuit (1929) which dealt with a situation similar to the one before the court. One of the questions there involved was whether the court should restrain the prosecution and enforcement of the judgment and execution ordered by a court of general jurisdiction in a foreign country (Canada).

The court, in affirming the decree of the district court, dismissing the bill, said, 33 F.(2d) 667, at page 672:

"It cannot be said that the parties have not had a full and fair opportunity and plenty of time to present every defense to the action brought against them. In fact, it appears that they have so presented them, and that the main object of the present litigation is to prevent the defendants herein from receiving the benefit of the litigation so long contested, and to give these plaintiffs an opportunity to retry the issues that have already been determined.

"We cannot lend ourselves to such a proceeding, and, unless there is some other ground of equitable jurisdiction, the plaintiffs' bill must be dismissed.

"The instant case is to be distinguished from cases cited by the plaintiffs, in that the successful litigants in the Ontario action are not seeking the aid of this court to enforce any rights or decrees obtained there. *When citizens of this country engage in an enterprise in a foreign country with respect to property there situated, they subject themselves to the laws, decisions, and decrees of its courts respecting such property and property rights.* No cases have been cited and none have been found which would sustain the jurisdiction of this court to declare null and void the orders and decrees of a court of general jurisdiction in Canada." (Italics by the court.)

Can it be said that this Swedish judgment is contrary to our own public policy? Has any valid reason been advanced why this court should not enforce this foreign judgment? The entire history of this litigation impels this court to answer both questions in the negative.

At the outset of the opinion, I made reference to proceedings instituted before Judge Mack on the question of the American adjudication in bankruptcy. I feel that it is incumbent upon me to carry out Judge Mack's desire of co-operation between the Swedish liquidators and our own, provided I can do so in good conscience and in accordance with equitable principles. It is the court's conviction that it can do so.

Will not the allowance of the claims result in a preferential treatment of American creditors (the very essence of Judge Mack's statement)? Clearly so, for to allow the claims would actually result in paying to American certificate holders about half the assets in the bankrupt estate because of their beneficial interest in the "Participating Debentures" which have been held to have no standing in the Swedish bankruptcy and in the face of a concession by Lee Higginson, there, that the "Participating Debentures" had no ranking claim. Such result, I believe, was not intended, when the adjudication in bankruptcy of Kreuger & Toll in this country was sanctioned.

I must also, at this point, reject the suggestion that the appearance of Lee, Higginson Trust Company in the Swedish courts was unauthorized. As trustee and depository, under the deposit agreement of September 1, 1928, it was clearly its right and duty to present its claims arising out of the "Participating Debentures" deposited with it (and the "American Certificates" issued thereunder) in any forum available for the presentation of such claims.

Regarding objection 1 interposed by the petitioner to the claims filed, I am of the opinion that a ruling as to whether or not the American certificate holders may individually prove their claims in bankruptcy despite the fact that their interests are represented by Lee Higginson, as trustee and depository, under the deposit agreement, is not necessary. Suffice to say that claims have been filed by both Lee Higginson and the individual certificate holders, and, all parties having had an opportunity to be heard, the question has become academic.

In view of the foregoing the court recognizes the judgment rendered against Lee, Higginson Trust Company by the highest court of Sweden and deems the same determinative of the issues before the court. While additional arguments have been offered by both sides in support of their respective positions, and the court has carefully considered them, it becomes

unnecessary to pass on them in view of this ruling.

The order of the referee overruling the petitioner's objections is accordingly reversed, and the objections are sustained.